**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **L.D.**

**No. 20-0780** (Hampshire County 20-JA-13)

## MEMORANDUM DECISION

Petitioner Mother J.D., by counsel Lauren M. Wilson, appeals the Circuit Court of Hampshire County's August 5, 2020, order terminating her parental rights to L.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joyce E. Stewart, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period, terminating her parental rights, and denying her post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner's parental rights to an older child were involuntarily terminated in May of 2019 during a prior abuse and neglect proceeding due to her drug abuse and failure to participate in the proceedings regarding that older child. This termination occurred less than one year before L.D.'s birth. The DHHR filed the instant child abuse and neglect petition against petitioner and the father in February of 2020 alleging that petitioner overdosed on heroin just a month after L.D.'s birth. The DHHR further alleged that petitioner had failed to correct the conditions of abuse and neglect that led to the prior termination of her parental rights. Petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in June of 2020 wherein petitioner stipulated to a history of drug abuse that led to the termination of her parental rights to an older child, that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

she had continued to abuse drugs since that time, and that her continued drug abuse and heroin overdose caused her to neglect L.D.[2] Petitioner then moved for a post-adjudicatory improvement period, which the circuit court held in abeyance pending the dispositional hearing.

The next month, the circuit court held a dispositional hearing wherein the DHHR moved for termination of petitioner's parental rights. At the hearing, a Child Protective Services caseworker testified that after petitioner completed an inpatient substance abuse program, she was granted an extension to remain at the treatment facility at her request. However, the caseworker testified that petitioner then used another patient's Suboxone and that she was discharged from the facility because of this infraction. The caseworker also testified that records from the treatment facility categorize petitioner as "high risk" for relapse and noted that petitioner reported she enrolled in treatment because she believed it would "look good" for the abuse and neglect proceedings. The caseworker further testified that petitioner continued to live with her father, despite describing him as "toxic" and the fact that he overdosed at his home in February of 2020. The caseworker testified that petitioner continued to reside with her father despite having a more appropriate home available with her mother. Finally, the caseworker testified that petitioner rekindled her relationship with the father of her older child, who is also a drug abuser. Next, a healthcare worker who performed petitioner's drug screens testified that petitioner tested positive for methamphetamine three times in June of 2020, and twice for THC the following month. The healthcare worker also testified that petitioner either failed to produce or report for drug screening on three occasions between April and July of 2020. Finally, petitioner testified that she would comply with the terms of an improvement period and that she was currently enrolled in a medically assisted drug treatment program. Petitioner denied using methamphetamine and THC during the proceedings, despite acknowledging the positive drug screens. Petitioner also admitted to rekindling her relationship with the older child's father, whose parental rights were also terminated in the prior abuse and neglect proceedings due to his continued drug abuse.

At the conclusion of the dispositional hearing, the circuit court found that petitioner had abused drugs in a prior child abuse and neglect proceeding, resulting in the involuntary termination of her parental rights to an older child. Additionally, the circuit court found that petitioner continued to abuse drugs, which resulted in neglect to L.D., and that petitioner did nothing to remedy her substance abuse between the termination of her parental rights to her older child and the initiation of the current child abuse and neglect proceedings. The circuit court also found that although petitioner attended an inpatient drug treatment program, she failed to successfully complete the program and the record from treatment indicated her motivation for seeking treatment was to make herself "look good" for the court rather than to gain assistance in remedying her addiction. Ultimately, the circuit court denied petitioner's motion for an improvement period, finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the child's

---

[2]This case suffered a substantial procedural delay directly attributable to the COVID-19 pandemic and resulting judicial emergency as well as petitioner's admission into an inpatient drug treatment program.

welfare. The circuit court terminated petitioner's parental rights by order entered on August 5, 2020. It is from this dispositional order that she now appeals.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period because she acknowledged the issues of neglect and took steps to remedy them. Petitioner argues that she sought drug treatment through a rehabilitation program and a medically assisted Suboxone program. According to petitioner, she showed improvement in these proceedings and during the prior abuse and neglect proceedings before she abandoned those proceedings. As such, petitioner asserts that she showed sufficient improvement to warrant the granting of an improvement period. Upon our review, we find that petitioner is entitled to no relief.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

While petitioner avers that she made some improvements, the record shows that petitioner failed to correct the conditions of abuse and neglect that led to the involuntary termination of her parental rights to an older child. Specifically, petitioner continued to abuse drugs after the birth of L.D., resulting in her overdose from heroin just one month after his birth. Although petitioner asserts that she sought treatment through a rehabilitation program, she does not dispute that she

---

[3]The father's parental rights were terminated below. The permanency plan is for the child to be adopted by his current foster family.

was discharged and failed to complete her extended program after she consumed another resident's medication. Further, records from petitioner's inpatient treatment indicate that her motivation for attending treatment was to impress the circuit court rather than maintain sobriety. Despite her participation in a medically assisted treatment program, petitioner also missed some drug screens and tested positive for methamphetamine and THC. Petitioner continued to associate herself with other drug abusers throughout the proceedings. Although she had an opportunity to live with her mother, petitioner chose to live with her father, whom she labeled as toxic and who was abusing drugs at the time of her heroin overdose. At the time of the dispositional hearing, petitioner also resumed her prior relationship with the father of her oldest child, whose own parental rights were terminated due to his drug abuse. As such, by continuing to abuse drugs, petitioner has failed to make any substantial changes to her circumstances despite the DHHR's prior interventions and services. Therefore, it is clear that petitioner was unlikely to fully participate in an improvement period, and we therefore find no error in the circuit court's decision.

Next, petitioner argues that the circuit court erred in failing to consider alternatives to the termination of her parental rights. According to petitioner, the circuit court was required to give precedence to the dispositions as listed in West Virginia Code § 49-4-604(c), and it should have granted her disposition pursuant to § 49-4-604(c)(2)–(3).[4] We find no error in the circuit court's termination of petitioner's parental rights.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. "No reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." *Id.* at § 49-4-604(d). We also acknowledge that "the legislature has reduced the minimum threshold of evidence necessary for termination [of parental rights] where one of the factors outlined in [West Virginia Code § 49-4-605] is present," such as the involuntary termination of parental rights to the sibling of a child named in the petition. Syl. Pt. 2, in part, *In re George Glen B., Jr.*, 205 W. Va. 435, 518 S.E.2d 863 (1999). However, "prior to the [circuit] court's . . . disposition regarding the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s)." *Id.* at 437, 518 S.E.2d at 865, syl pt. 4, in part.

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect given that this was her second child involved in a child abuse and neglect proceeding. Further, petitioner engaged in the same substance abuse in the instant

---

[4]West Virginia Code § 49-4-604(c)(2)–(3) provides that a circuit court may

[r]efer the child, the abusing parent, the battered parent or other family members to a community agency for needed assistance and dismiss the petition;

[r]eturn the child to his or her own home under supervision of the department.

proceeding as she did in the prior child abuse and neglect case regarding her older child. Despite the extensive services the DHHR offered to petitioner, there is no indication that petitioner made any substantial improvements or was willing or able to make changes to her abusive and/or neglectful behavior. Indeed, petitioner acknowledged that she entered the rehabilitation program only because it would make her "look good" and then failed to complete the extended program. As such, the evidence supports the circuit court's conclusion that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Lastly, we find that the termination of petitioner's parental rights was necessary for the child's welfare, given petitioner's failure to remedy the chronic conditions at issue that resulted in the prior termination of her parental rights to the older child.

Based on the foregoing, we find no error in the circuit court's refusal to grant petitioner a less-restrictive alternative to the termination of her parental rights, given that we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, petitioner argues that the circuit court erred in denying her motion for post-termination visitation because she exercised weekly visitation with the child throughout the proceedings, and all visits were appropriate without any noted concerns. We find petitioner's arguments unavailing.

In regard to post-termination visitation, we have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, the circuit court found it was not in the child's best interests to grant visitation. Although petitioner may care for the child, there is no evidence that she developed a close bond with him given that he was just one month

old when he was removed from petitioner's care. Indeed, "[o]ur cases indicate that a close emotional bond generally takes several years to develop." *In re Alyssa W.*, 217 W. Va. 707, 711, 619 S.E.2d 220, 224 (2005). Further, the DHHR caseworker testified it would be disruptive to grant visitation between petitioner and L.D. when his sibling, with whom he resides, does not have any contact with petitioner. Accordingly, we find no error in the circuit court's denial of petitioner's motion for post-termination visitation with the child.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 5, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton